IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIE EARL BONDS, etc.,     ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 1:14-cv-330-WHA |
| ) | (WO) |
| HYUNDAI MOTOR COMPANY, et al., ) | |
| ) | |
|    Defendants. ) | |

**ORDER**

This is a diversity action involving an automobile accident in which a passenger died as a result of his partial ejection from the vehicle. The various claims are premised on a central allegation that the vehicle's door locking and latch system was defective. Count 1 is based on the Alabama Extended Manufacturer's Liability Doctrine (AEMLD); counts 2 through 4 are based on claims of negligent and wanton conduct under Alabama law.

It will come as no surprise that the parties had a discovery dispute which the court first resolved by an April 8, 2015 order which partially granted the plaintiff's motion to compel. (doc. # 26) On June 26, 2015, the plaintiffs filed a motion for reconsideration of that order. (doc. # 39) The defendants have filed a response, (doc. # 40) and the motion for reconsideration is now properly before the court. Upon consideration of that motion, it is

ORDERED that the motion for reconsideration (doc. # 26) is GRANTED as set

out below.

The vehicle in question is a 1997 Hyundai Accent which uses in its rear doors a tension rod assembly which connects to the door's locking mechanism.  The vehicle does not have an automatic or central door locking system.  The plaintiffs have grouped the remaining discovery disputes into several categories, and the court will use those categories for its discussion of the issues although not in the order as presented by the plaintiffs.

But first, a few observations are in order.  As all lawyers practicing in federal court know, complaints are important.  *See e.g., Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In this case, the complaint alleges that the "door locking and latching system was defective in that it allowed/caused the door to open in a foreseeable minor side impact." (doc. # 1 at 5) At that level of generality and given the complexity of modern vehicles, almost any defect is conceivable.  But as naturally happens in the development of this type of case, the plaintiffs begin to define with more specificity the nature of the defect.  Thus, by the time the motion to compel was filed, the plaintiff identified the alleged defect more specifically.  This is how the plaintiffs describe the latch system.

> The 1997 Hyundai Accent is outfitted with a door latch system that consists of a metal rod connecting the interior/exterior door handles to the latch mechanism. When the interior/exterior handle is pulled, the metal rod is moved forward and the latch mechanism is pulled upward, releasing the latch mechanism and allowing the door to open.

(doc. # 22 at 4)

The plaintiffs claim that during an impact the rod will bend, causing the door to open. Thus, the specific defect identified is a rigid, metal rod which will deform on impact causing a vehicle door to open. With that understanding, the court turns to the specific remaining disputes.

## I. Door Latch System Similarity

Following the conclusion of proceedings on the original motion to compel, the court entered an order granting the motion to compel in part by requiring the defendants to

> file a response in writing to the question of whether Hyundai Motor Company or Hyundai Motor America, Inc., investigated, tested or otherwise explored the use of a cable door latching system instead of a rod based door latching system in any vehicles built on the X3 platform. If so, then at the same time, the defendants shall provide any documents that relate to the investigation, testing or exploration of the use of cable door latching systems in those vehicles built on the X3 platform.

The court limited the defendants' response to the X3 platform because the court agreed with the argument that other vehicles not built on that platform were not substantially similar. The defendants relied on *Baine v. General Motors Corp.*, 141 F.R.D. 328 (M.D. Ala. 1991), arguing that unlike in *Baine* this case involved "the entire door locking and latching system–not a single component part." (doc. # 40 at 4)

The court was in error in agreeing with the defendants that discovery should be limited to the X3 platform. Even though the complaint spoke to a door locking and latching *system*, it is now quite clear that the alleged defect is the use of a metal rod. And

just as in *Baine* where the defect was a pendulum, here the alleged defect is the rigid rod which can bend on impact. The defendants have not shown that use of a rod which could bend on impact thus causing a door to open would be different for other vehicle platforms even if other components and configurations of a latching system were different. The court recognizes that the defendants' expert opined that other rod latch systems were not similar because the components were not identical in dimensions, shape or configuration. (doc. # 24-5) But those differences do not explain why the use of a rod is not sufficiently similar to support discovery on other models.

## II.  Time Frame for Discovery[1]

Hyundai limited its responses to the time period 1995 to 1999 because those are the years in which vehicles on the X3 platform were manufactured. However, Hyundai also disclosed that it used a rod assembly door latch system in every vehicle it manufactured from 1985 to 2006. (doc. # 24-5) The plaintiffs argue that the time for discovery about other rod systems therefore should be from January 1, 1985 to December 31, 2002. This latter date is some six years after the date of the manufacture of the specific vehicle involved in this lawsuit. The six year time frame is premised on *Ex parte Michelin North America, Inc.*, 161 So.3d 164, 168 (Ala. 2014), which the plaintiffs characterize as "other design defect discovery disputes under Alabama law." (doc. # 39 at 14) *Michelin* may stand for many propositions of law but a standard discovery time frame

---

[1] Given the court's original conclusion about the motion to compel, the court did not address this issue in its first order.

is not one of them.

But that, of course, merely underscores the fact that in general the time frame for allowing discovery must be determined on a case-by-case basis according to the general parameters established in the Federal Rules of Civil Procedure.  Under FED R. CIV. P. 26(b)(2)(C), "the court must limit the  . . .  extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

FED R. CIV. P. 26 (b)(2)(C)(iii).[2]  A central issue in this case is defective design, and to prove that a product is defective for purposes of the AEMLD, a plaintiff must prove that a safer, practical, alternative design was available to the manufacturer *at the time the product was manufactured*.  See *Bagley v. Mazda Motor Corp.*, 864 So.2d 301, 312 (Ala. 2003).

Thus, the court finds that permitting discovery for six years beyond that date on which the vehicle at issue in this case is unwarranted.  Those years cannot show that an alternative design was available to Hyundai when the subject vehicle was manufactured, and the burden of discovery for those years outweighs any benefit.  Hyundai offered

---

[2]Interestingly, effective December 1, 2015, these factors are moved to FED R. CIV. P. 26(b)(1) and a new factor, "proportional to the needs of the case" is added at the beginning of the list.  The comments to the change in the rule make it clear that this new factor is an important consideration both for the parties and the court.  In any event, application of this factor will undoubtedly lead to some interesting discovery disputes.

discovery for the X3 platform from 1995 to 1999. While some two years after the date of the subject vehicle's manufacture may be of limited relevance, the court will follow Hyundai's lead and use 1999 as the last year for which to permit discovery.

That does not answer the question of how long before 1999 discovery should be required. The time frame should be reasonable and in light of the resources of Hyundai, the amount in controversy and the importance of the issues, the court finds that a ten year time frame is appropriate for discovery.

### III. Alternative Design

To succeed on a defective design claim, a plaintiff must demonstrate that a safer, practical, alternative design was available to the manufacturer at the time the product was manufactured, the utility of which outweighed the utility of the design actually used. *See Beech v. Outboard Marine Corp.*, 584 So. 2d 447 (Ala. 1991). Generally, the plaintiffs here seek discovery about other rod assembly designs, cable linkage designs and automatic or central door locking systems. In response to the court's first order compelling discovery "Hyundai certified that it did not investigate, test or otherwise explore the use of a cable door latching system instead of a rod based door latching system in any vehicles built on the X3 platform from 1995 through 1999." Hyundai also certified that no vehicles on any platform used an automatic locking system during the period 1995 through 1999. (doc. # 40 at 7) The defendants also disclosed that thirteen vehicles used a central locking system from 1995 to 1999. Given the court's earlier

6

conclusion about the platform restriction, the court will order additional discovery about alternative designs.

## IV.  Similar Incidents

The plaintiffs ask that the court order the defendants to produce information about similar incidents occurring both before and *after* the manufacture of the subject vehicle. The defendants have produced information about prior, similar incidents involving only the X3 platform.  As already explained the court has concluded that discovery should encompass door locking and latching systems which utilize a rod, and discovery about prior incidents in which a vehicle door opened during impact because the rod deformed will be ordered.

This leaves the question of whether post-manufacture incidents should also be discoverable.  The plaintiffs argue that because they must prove that the design is defective, post-manufacture incidents, while not relevant to put the defendants on notice of a defect, are relevant to prove the existence of a defect.  Under Alabama law, a plaintiff cannot rely solely on the fact that an accident occurred to prove the existence of a defect.  *Clayton v. LLB Timber Co., Inc.*, 70 So.3d 283, 287 (Ala. 2011).  And, to prove that a product is defective for purposes of the AEMLD, a plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the product.  *General Motors Corp. v. Jernigan*, 883 So.2d 646, 662 (Ala. 2003).  Thus, the question of whether a defect exists is not an isolated element of proof but is

contingent upon a number of other factors related to the existence of an alternative design available at the time of manufacture. Thus, the court concludes that post-manufacture incidents are not discoverable. Accordingly, it is further

ORDERED that the defendants on or before October 15, 2015, shall supplement their prior responses to discovery with the following:

1. Information relating to the design, engineering and testing of door latch systems using a rod on all Hyundai vehicles regardless of platform manufactured during the period 1989 to 1999.

2. Information relating to the design, engineering and testing of door latch systems using other designs such as, but not limited to, cable linkage systems on all Hyundai vehicles regardless of platform manufactured during the period 1989 to 1999.

3. Information relating to the design, engineering and testing of central and automatic door locking systems on all Hyundai vehicles regardless of platform manufactured during the period 1989 to 1999.

4. Information about incidents occurring during the period 1989 to the date of the manufacture of the subject vehicle involving Hyundai vehicles, regardless of platform, with a rod based latch system in which a vehicle door opened upon impact.

Done this 16th day of September, 2015.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE