## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIE EARL BONDS,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **1:14-CV-330-KOB** |
| **HYUNDAI MOTOR CO.,** *et al.*, | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

This wrongful death and products liability case comes before the court on Plaintiff Willie Earl Bonds's "Motion for Summary Judgment on Defendants' Affirmative Defenses of Contributory Negligence and Assumption of the Risk." (Doc. 90).

Marvin Culver, the backseat passenger of a 1997 Hyundai Accent, was partially ejected from the vehicle when his door opened during a collision. Mr. Culver suffered catastrophic injuries from the wreck and died nearly a year later.

Mr. Bonds, the administrator of Mr. Culver's estate, brings wrongful death and products liability claims for Mr. Culver's death against Defendants Hyundai Motor Company and Hyundai Motor America under the Alabama Extended Manufacturer's Liability Doctrine, Ala. Code § 6-5-500, *et seq.* Mr. Bonds alleges that the Accent's door opened during the collision because of a defective door

locking and latching system.

Hyundai raises the affirmative defenses of contributory negligence and assumption of the risk based on Mr. Culver's failure to wear a seatbelt and failure to exercise reasonable care in handling the door locking and latching system.

Mr. Bonds moved for summary judgment on Hyundai's affirmative defenses, which the court will GRANT IN PART and DENY IN PART. Because *front* seat passengers are not contributorily negligent for not wearing a seatbelt by statute, Hyundai cannot rely on Mr. Culver's failure to wear a seatbelt as evidence of contributory negligence even though he was a *back* seat passenger. But because evidence exists of the visibly damaged condition of Mr. Culver's door handle and the latch system, a jury must decide whether Mr. Culver assumed the risk of being ejected from the car by not wearing his seatbelt and whether he was contributorily negligent or assumed the risk of his door opening in a collision by not locking his door.

## I.    STANDARD OF REVIEW

A trial court can resolve a defendant's affirmative defenses on summary judgment *only* when the plaintiff establishes two essential elements: (1) no genuine disputes of material fact exist; *and* (2) the plaintiff is entitled to judgment as a matter of law as to the affirmative defense. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (finding that the Rule 56

standard applies to motions for summary judgment on any dispositive issue for which the nonmoving party will bear the burden of proof at trial).

Under the first element of the moving party's summary judgment burden, "'[g]enuine disputes [of material fact] are those in which the evidence is such that a reasonable jury *could* return a verdict for the non-movant.'" *Evans v. Books-A-Million*, 762 F.3d 1288, 1294 (11th Cir. 2014) (emphasis added) (quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)). A court will consider an issue of fact "material" if "it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And a court will consider an issue of fact "genuine" if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.*

The court must view the record evidence in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). And reasonable inferences drawn from record evidence can defeat a motion for summary judgment because "'the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015) (quoting *Allen*, 121 F.3d at 646).

## II.    BACKGROUND

On May 18, 2011, Dareyan Byrd, the driver of the Hyundai Accent, and Casey Cauley, the front passenger, offered Mr. Culver a ride.  Mr. Culver opened the rear driver's side door of the Accent, sat in the backseat behind the driver's seat, and closed the door.

According to Mr. Byrd and Ms. Cauley, Mr. Culver completely shut his door, no lights or sounds from the Accent indicated that he did not, and Mr. Culver did not mention that he had any trouble with the door.  (Doc. 91-1 at 21; Doc. 91-2 at 8).  But, according to Mr. Byrd, the interior handle on the rear driver's side door was broken and hung loosely from its position on the door.  (Doc. 91-1 at 10, 13–14, 16, 36, 54, 56).  The broken handle exposed a metal rod inside the door that a person would have to pull to open the door from the inside.  (*Id.* at 12–13, 15–16, 36).

Soon after they drove away, the Accent collided with a United States Postal truck.  Mr. Culver was not wearing his seatbelt at the time of the collision.  Mr. Culver's door opened during the collision, he was partially ejected from the car, and his head struck the ground.  He suffered severe injuries from the accident that rendered him quadriplegic.  He died from aspiration due to complications of quadriplegia nearly a year later on May 8, 2012.

In his complaint, Mr. Bonds alleges that, at the time of the accident, "[t]he

Hyundai Accent and its component parts . . . were defective and unreasonably

dangerous . . . .  Specifically, the door locking and latching system was defective in

that it allowed/caused the door to open in a foreseeable minor side impact.

[Hyundai] knew, or . . . should have known, that [the] Hyundai Accent and its

component parts were unreasonably dangerous . . . ."  (Doc. 1 at ¶ 5).

    Relying on this allegation, Mr. Bonds brings wrongful death and several

products liability counts under the AEMLD on behalf of Mr. Culver's estate.

(Doc. 1 at ¶¶ 7–18).  Hyundai contends that Mr. Culver's contributory negligence

and assumption of the risk, based on his failure to wear a seatbelt and exercise

reasonable care in handling the door locking and latching system, bars all of Mr.

Bonds's claims.

## III.   ANALYSIS

    The AEMLD provides a cause of action "against an automobile

manufacturer where it is alleged that an automobile manufactured by it was

defective, and was involved in an accident, and that the defect, although not

causing the accident to occur, contributed to the injuries sustained therein."

*Gen. Motors Corp. v. Edwards*, 482 So. 2d 1176, 1191 (Ala. 1985), *overruled in*

*part on other grounds*, *Schwartz v. Volvo N. Am. Corp.*, 554 So. 2d 927 (Ala.

1989).  Courts in Alabama refer to these causes of action as "crashworthiness"

claims, where, because "collisions are a statistically foreseeable and inevitable risk

within the intended use of an automobile," courts examine only whether the defect contributed to the plaintiff's injuries during an accident.  *Id.* at 1181.

Contributory negligence and assumption of the risk are distinct affirmative defenses to an AEMLD claim that, if proven, bar the plaintiff's recovery.  *Dennis By & Through Dennis v. Am. Honda Motor Co.*, 585 So. 2d 1336, 1339 (Ala. 1991).  Contributory negligence bars recovery in an AEMLD case "if a proximate cause of the accident was the unreasonably dangerous condition of the product, but a contributing proximate cause of the accident was the plaintiff's failure to use reasonable care [in using the product]."  *Campbell v. Cutler Hammer, Inc.*, 646 So. 2d 573, 574 (Ala. 1994) (alteration in original).

And assumption of the risk bars recovery in an AEMLD case if the plaintiff "'discover[ed] the defect and [was] aware of the danger, and nevertheless proceed[ed] unreasonably to make use of the product and [was] injured by it.'"  *Hicks v. Commercial Union Ins. Co.*, 652 So. 2d 211, 220 (Ala. 1994) (quoting *Atkins v. Am. Motors Corp.*, 335 So. 2d 134, 143 (Ala. 1976)).

Normally, juries must resolve the question of whether a plaintiff acted negligently or assumed the risk of injury because reasonable persons often may differ on what constitutes unreasonable conduct.  *Wyser v. Ray Sumlin Const. Co.*, 680 So. 2d 235, 238 (Ala. 1996).

In this case, Hyundai raises contributory negligence and assumption of the

risk as affirmative defenses based on Mr. Culver's (1) failure to wear a seatbelt; and (2) failure to exercise reasonable care in handling the Accent's door locking and latching system.  The court will separately address these two theories underlying Hyundai's defenses.

### A.    **Failure to Wear a Seatbelt**

#### 1.    Contributory Negligence

The Alabama Safety Belt Act provides that "[e]ach *front seat* occupant of a passenger car manufactured with safety belts . . . shall have a safety belt properly fastened about his or her body at all times when the vehicle is in motion."  Ala. Code § 32-5B-4(a) (emphasis added).  It also provides that "[f]ailure to wear a safety belt *in violation of this chapter* shall not be considered evidence of contributory negligence and shall not limit the liability of an insurer . . . ."  Ala. Code § 32-5B-7 (emphasis added).  So, read literally, the statute only protects *front seat* passengers from evidence that they failed to wear a seatbelt as evidence of contributory negligence.  The statute is silent as to back seat passengers like Mr. Culver.

But if front seat passengers who fail to wear a seatbelt are not contributorily negligent as a matter of law, back seat passengers must not be either.  When a front seat passenger does not wear a seatbelt, he violates a statutory duty; a back seat passenger has no statutory duty.  In this sense, the front seat passenger exercises

*less* reasonable care than the back seat passenger, and no reason exists to deprive the back seat passenger of the benefit afforded to his more careless counterpart in the front seat.

Exempting front seat passengers from liability for contributory negligence serves a clear purpose that applies just as strongly to back seat passengers.  In Alabama, a so-called "pure contributory negligence" jurisdiction, a plaintiff's negligence that contributes to his injuries in any degree completely bars him from recovery in an AEMLD action.  *See Campbell*, 646 So. 2d at 574.  And a front seat passenger who fails to wear a seatbelt could be viewed as negligent *per se* in an AEMLD action because he would violate the Ala. Code § 32-5B-4(a) seatbelt requirement.  *See Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005) (finding negligence *per se* when a party violates a statute and causes injury of the type contemplated by the statute to a person the statute intended to protect).

So, without Ala. Code § 32-5B-7, defendant car manufacturers would avoid *all* liability for injuries caused by their defective products to a front seat passenger whose failure to wear a seatbelt contributed to his injuries, even though such defendants are guilty of "negligence as a matter of law" by "selling a dangerously unsafe product."  *See Atkins*, 335 So. 2d at141; *Edwards*, 482 So. 2d at 1181.

The Alabama Legislature prevented this harsh outcome by enacting Ala.

Code § 32-5B-7.  And because the Alabama Safety Belt Act does not require back seat passengers to wear a seatbelt, the Alabama Legislature had no reason to include back seat passengers in § 32-5B-7.  But not conferring the same benefit to back seat passengers—who, again, do *not* violate any statutory duty when they fail to wear a seatbelt—would be a nonsensical application of the law.

The court is not aware of any binding precedent that applies Ala. Code § 32-5B-7 to a back seat passenger.  The issue of the plaintiff's failure to wear a seatbelt usually arises in AEMLD cases when the plaintiff alleges a defect in the seatbelt, which is not the case here.  *See, e.g.*, *Gen. Motors Corp. v. Saint*, 646 So. 2d 564, 568 (Ala. 1994) (finding that the trial court should have instructed the jury on contributory negligence when evidence showed that the plaintiff, who alleged a defect in the seatbelt, either did not wear or left slack in her seatbelt).

The court does not find that Ala. Code § 32-5B-7 itself protects back seat passengers because the statute does not mention back seat passengers.  But the court finds that because front seat passengers are not contributorily negligent as a matter of law if they fail to wear a seatbelt, back seat passengers are also not contributorily negligent as a matter of law if they fail to wear a seatbelt.  So Hyundai may not rely on Mr. Culver's failure to wear a seatbelt as evidence of contributory negligence.

2.     Assumption of the Risk

On the other hand, Ala. Code § 32-5B-7 does not mention assumption of the

risk.  And the Alabama Supreme Court, though it has characterized assumption of

the risk as a type of contributory negligence, explicitly considers the assumption of

the risk defense to be distinct from the contributory negligence defense in AEMLD

cases.  *See Uniroyal Goodrich Tire Co. v. Hall*, 681 So. 2d 126, 129–30 (Ala.

1996); *Hicks*, 652 So. 2d at 219–20; *Dennis*, 585 So. 2d at 1339; *Atkins*, 335 So. 2d

at 143–44 (separately defining contributory negligence and assumption of the risk).

So, though both defenses rely on Mr. Culver's failure to wear a seatbelt, the

court must analyze Hyundai's assumption of the risk defense independent of its

analysis of Hyundai's contributory negligence defense.  In doing so, the court finds

that evidence exists from which reasonable jurors could decide that Mr. Culver was

aware of the risk of his door opening during a collision because of the defective

door locking and latching system and assumed the risk of ejection by sitting next to

that door without wearing his seatbelt.

As the court mentioned above, a plaintiff in an AEMLD case assumes the

risk of the injuries he suffered if he "'discover[ed] the defect and [was] aware of

the danger, and nevertheless proceed[ed] unreasonably to make use of the product

and [was] injured by it.'"  *Hicks*, 652 So. 2d at 220 (quoting *Atkins*, 335 So. 2d at

143).  For example, in *Hicks*, a jury could find that, because the plaintiff had a long

history of conducting hydrostatic pressure tests of vessels, he assumed the risk of injury by standing in front of a vessel while substantially pressurizing it.  652 So. 2d at 220.  And in *Cooper v. Bishop Freeman Co.*, 495 So. 2d 559 (Ala. 1986), a jury could find that, because the plaintiff admitted that she knew the head of a fabric pressing machine was hot, she assumed the risk of burns by placing her arm underneath the head of the machine.  495 So. 2d at 563, *overruled on other grounds by Burlington N. R. Co. v. Whitt*, 575 So. 2d 1011 (Ala. 1990).

Here, Hyundai has provided enough evidence to present its assumption of the risk defense to a jury.  Mr. Byrd, the driver of the Accent, testified that Mr. Culver's interior door handle was broken and hung loose from its position.  (Doc. 91-1 at 10, 13–14, 16).  And the broken handle revealed an internal rod, part of the door latch system, that should not have been visible.  (*Id.* at 12–13, 15–16, 36).  Reasonable jurors could look at this evidence and decide that Mr. Culver discovered the defective door locking and latching system and was aware that the door could come open because the door handle—the component that allowed him to control the door latch system—was visibly broken.  And reasonable jurors could decide that Mr. Culver nevertheless unreasonably failed to wear a seatbelt and assumed the risk of ejection if his door came open because of the defective door locking and latching system.

On the other hand, Mr. Byrd and the front seat passenger, Ms. Causey,

testified that Mr. Culver completely shut the door when he entered the Accent, did not say that he had any problems with the door, and no noises or lights indicated that his door was not securely latched.  (Doc. 91-1 at 21; Doc. 91-2 at 8).  From this evidence, reasonable jurors could find that Mr. Culver had no reason to believe that the door latch system had a potential defect and thus he did not voluntarily assume the risk of ejection in a collision by sitting next to the door without wearing his seatbelt.

So, genuine issues of fact exist as to whether Mr. Culver assumed the risk of ejection in a collision because of the defective door locking and latching system by not wearing a seat belt.  A jury must resolve these genuine factual issues, so the court will deny the motion for summary judgment on Hyundai's affirmative defense of assumption of the risk based on Mr. Culver's failure to wear a seatbelt despite the obvious damage to the door latch.

## B.   Failure to Exercise Reasonable Care in Handling the Door Locking and Latching System

Hyundai directs its next set of defenses at Mr. Culver's purported misuse of the allegedly defective door locking and latching system by not locking his door.

### 1.   Contributory Negligence

Unlike evidence of seatbelt non-use, no statute prevents Hyundai from using evidence of Mr. Culver's failure to exercise reasonable care in using the allegedly defective door locking and latching system as evidence of contributory negligence.

Instead, the law entitles Hyundai to present its contributory negligence defense to a jury if a genuine issue of fact exists that Mr. Culver's failure to exercise reasonable care in using the door locking and latching system was a contributing proximate cause of him being partially ejected from the car. *See Campbell*, 646 So. 2d at 574.

As mentioned above, evidence shows that Mr. Culver's interior door handle and part of the door latch system was visibly broken. (*See* Doc. 91-1 at 10, 12–16, 36). Based on this evidence, a rational trier of fact could decide that components designed to keep the door closed were visibly defective to the rear passenger and, as Hyundai contends, a reasonable passenger would have locked the door to prevent the door from opening. So, a genuine issue of fact exists as to whether Mr. Culver failed to exercise reasonable care by not locking his door. The court will deny the motion for summary judgment as to this aspect of Hyundai's contributory negligence defense.

### 2.   Assumption of the Risk

Likewise, because of the visible defects with the door handle and the exposed internal metal rod in the door latch system, a rational trier of fact could decide that Mr. Culver was aware of the danger of his door unexpectedly opening and voluntarily assumed that risk by not locking his door to prevent it from opening. So, a genuine issue of fact exists as to whether Mr. Culver assumed the

risk of his door unexpectedly opening in a crash by not locking his door.  The court will deny the motion for summary judgment on Hyundai's assumption of the risk defense.

## IV.   CONCLUSION

By separate order, the court will **GRANT IN PART** and **DENY IN PART** Mr. Bonds's motion for summary judgment on Hyundai's affirmative defenses.

Hyundai may not rely on Mr. Culver's failure to wear a seatbelt as evidence of contributory negligence.  But Hyundai may rely on Mr. Culver's failure to wear a seatbelt as evidence of assumption of the risk of being ejected from the car during a collision because of the obvious damaged condition of the door handle.

And Hyundai may rely on Mr. Culver's failure to exercise reasonable care in using the door locking and latching system by not locking his door as evidence of contributory negligence and assumption of the risk of his door unexpectedly opening and his being ejected from the car during a collision.

**DONE** and **ORDERED** this 18th day of March, 2019.

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE